UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE, <br><br> Plaintiff, <br><br> v. <br><br> WENTWORTH INSTITUTE OF TECHNOLOGY, INC, <br><br> Defendant. | * <br> * <br> * <br> * <br> *   Civil Action No. 1:21-cv-10840-IT <br> * <br> * <br> * <br> * |

MEMORANDUM & ORDER

June 3, 2022

TALWANI, D.J.

Plaintiff, proceeding as Jane Doe, brings this action against Defendant Wentworth Institute of Technology, Inc. ("Wentworth") for violations of Title IX of the Education Amendments of 1972 ("Title IX") and breach of contract. Wentworth filed a Motion to Dismiss [Doc. No. 15]. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

**I.  Factual Background**

As alleged in the Complaint [Doc. No. 1], the facts are as follows.

A.  *Wentworth's Sexual Misconduct Policies*

Wentworth is a private institution of higher education in Boston, Massachusetts. Compl. ¶ 1 [Doc. No. 1]. During the period relevant to this matter, it received federal funding from the Department of Education ("DOE"). Id. at ¶ 9. To receive those funds, Wentworth agreed to operate its programs and activities in accordance with Title IX and Title IX regulations. Id.

Wentworth has a Sexual Misconduct and Sex-Based Discrimination Policy that sets forth the university's policies regarding sexual and gender-based misconduct. Id. at ¶ 15. For students who make complaints of sexual discrimination or sexual assault, the policy affords:

a. Complainants and Respondents [] the right "to be treated equitably by the University" which includes Wentworth "following a grievance process that complies with this policy";

b. The right to a fair, impartial proceeding that begins promptly;

c. The right to a resolution process that is consistent with the University's policies, transparent to the Complainant, and in which the burden of proof and of gathering evidence rests with the University and not the parties;

d. The right to an Advisor of the Party's choosing during the grievance process. If a Party does not have an Advisor present at a Title-IX related hearing, the University will provide without fee or charge, an Advisor of the University's choice; [and]

e. The right to an objective evaluation of all relevant evidence—including both inculpatory and exculpatory evidence—and provide that credibility determinations will not be based on a person's status as a Complainant, Respondent, or witness.

Id. The policy states that the Title IX coordinator will send a final investigative report no fewer than ten business days prior to a hearing. Id. at ¶ 16.[1]

---

[1] Wentworth refers the court to an untitled document which Wentworth identifies as its 2019-2020 Code of Conduct. Def's Mem. 3 & n.2 [Doc. No. 15-1]; Exhibit A [Doc. No. 15-2]. Wentworth asserts that the document may be considered on a motion to dismiss because the Complaint [Doc. No. 1] references the Code of Conduct. It is not apparent, however, that the document proffered by Wentworth is the policy referenced in the complaint, which primarily refers to a "Sexual Misconduct and Sex-Based Discrimination Policy." Accordingly, the court treats the document as one outside of the pleadings.

On a motion to dismiss, if matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment. Fed. R. Civ. P. 12(d). Here, the court excludes the outside material where a summary judgment motion would be premature and Wentworth has not provided any authentication, such as by affidavit, that the untitled document is in fact Wentworth's 2019-2020 Code of Conduct or that it is Wentworth's only relevant policy for the applicable period.

During the hearing, each party's advisor is responsible for conducting the cross-examination of the other party and witnesses. Id. If a party does not have an advisor, the school will appoint one for the sole purpose of conducting cross-examination. Id. Evidence regarding a complainant's prior sexual behavior or history must not be included in the investigative record or during the hearing unless (1) it is offered to prove that someone other than the respondent committed the conduct alleged or (2) if the evidence concerns specific incidents of the complainant's sexual history with the respondent, it is offered to prove consent. Id. Having heard the evidence, the decisionmakers must use a preponderance of the evidence standard to determine whether the alleged violation occurred. Id. The complainant and respondent will simultaneously receive a written determination of responsibility, typically within five business days of the hearing. Id. The statement should include (1) a statement of the allegations, (2) a description of the procedural steps taken during the grievance process, (3) findings of fact supporting the determination, (4) conclusions regarding the application of the policy to the facts, (5) a statement and rationale for the result of each allegation, and (6) options for appeal. Id.

      B.      *The Alleged Assault, Doe's Reports of the Event, and Wentworth's Initial Actions*

Doe began her freshman year at Wentworth in the fall of 2019. Id. at ¶ 17. She alleges that on the night of November 22, 2019, and into the next morning, a fellow student ("respondent") raped her in her dorm room while she was incapacitated by alcohol. Id. at ¶ 18. When she awoke on November 23, she was extremely distraught and disclosed the assault to her friend. Id. at ¶ 19.

The next day, November 24, Doe disclosed the rape to the coach of her sports team. Id. at ¶ 20. Doe also made a report to campus police officers Sergeant Dexter Francis and Patrol Officer Robert Moran. Id. at ¶ 21. The same day, Doe went to the hospital for a medical

3

examination and sexual assault evidence collection kit. Id. at ¶ 23. Campus police concurrently gathered evidence from Doe's dorm room, such as clothing and bedsheets, and brought it to the hospital. Id. at ¶ 24.

The coach reported the sexual assault allegations to Wentworth's athletic director, who made a report to Annamaria Wenner, the Dean of Students. Id. at ¶ 20. The campus police officers also contacted Dean Wenner, and Sergeant Francis told her that Doe "had been incapacitated and thus unable to give consent." Id. at ¶ 22. Francis suggested issuing a no contact order between Doe and the respondent, but Wenner said that she would do so only if Doe requested it. Id.

The following day, November 25, Doe met with Dean Wenner and requested a no contact order, which issued the same day. Id. at ¶ 25. During the meeting, Wenner did not explain in detail Doe's options under Title IX and the school's policies. Id. at ¶ 26. Wenner also did not submit a report to Beth Devonshire, the Title IX Coordinator. Id. Instead, Wenner placed the burden on Doe to make a decision regarding how the complaint should be handled, even though Wentworth's policies allow for a formal investigative process without a complainant's involvement or consent. Id.

      C.     *The Formal Complaint and Investigation*

On December 12, 2019, after Doe's mother contacted Dean Wenner about the alleged assault, Wenner offered to put Doe in contact with Devonshire. Id. at ¶ 27. Doe met with Devonshire on December 19, 2019, and elected to proceed with the formal investigative process as set out in Wentworth's policies. Id. at ¶ 28. The next day, Wentworth issued a notice of Doe's formal complaint to her and the respondent and purported to initiate the formal investigative process. Id. at ¶ 31.

4

During December 2019 and January 2020, Doe became increasingly isolated from her peers, began suffering from anxiety and depression, and moved to a different residence hall away from the respondent. Id. at ¶¶ 30, 33. She struggled in her classes and stopped attending campus events. Id. at ¶ 54. Although Devonshire reached out to Doe on a few occasions regarding the investigation, Doe's emotional state hindered her ability to communicate with Devonshire about the assault and investigation. Id. at ¶ 33. Doe did not know who to turn to as a support person and was not aware that the school policies afforded her the right to be appointed a support person to help her through the investigative process. Id. at ¶ 33.

On January 10, 2020, Wentworth put the investigation on hold until further notice because Doe could not actively participate in the investigation, even though Wentworth policy allows for an investigation to proceed with or without the participation of the victim. Id. at ¶ 34. The school reopened the investigation on January 31, 2020, but did not retain a third-party investigator per school policy until February 12, 2020. Id. at ¶ 35. Interviews of witnesses took place between February 25 and 27, 2020. Id. at ¶ 36. The respondent was not interviewed until March 10, 2020, once he obtained counsel. Id. at ¶ 37. During the interview, the respondent claimed that he and Doe had had consensual sex. Id. at ¶ 38. The investigators noted in their final report, however, that the respondent "gave two versions [of his story] to investigators that differed slightly." Id.

Under Wentworth's policy, information regarding a complainant's prior sexual behavior or history may not be included in the investigative record or the grievance hearing unless (1) it is offered to prove that someone other than the respondent committed the alleged conduct or (2) if the incidents of sexual behavior were with the respondent, it is offered to prove consent. Id. at ¶ 16. Despite this policy, Doe's sexual history with others was repeatedly mentioned in the

5

investigative record. Id. at ¶ 48. The investigation included witnesses' allegations that they themselves had had sexual relationships with Doe and that she often regretted sexual encounters after the fact. Id. at ¶¶ 51-52. The investigative record also reported that witnesses stated that Doe had been dancing "provocatively" on the night of the incident. Id. at ¶ 52. No information about the respondent's sexual behavior and history was included in the school's investigative report. Id. at ¶ 50.

During Sergeant Francis's interview, he told investigators that he had conducted additional interviews with Doe and the respondent soon after the incident; however, complete notes from those interviews were never provided to the investigators. Id. at ¶¶ 40-41. Francis also told investigators that he did not have his file on the incident with him, but the investigators did not request a follow-up interview with Francis in which he had access to his notes. Id. at ¶ 43. Francis indicated during his interview that there were possibly other people in the room when the alleged rape occurred, but there was no additional inquiry into this claim. Id. at ¶ 44. Francis also remarked that Officer Moran may have had additional information about Doe's sexual assault evidence collection exam, but the school investigators did not follow up on this claim and apparently did not request the results of the exam. Id. at ¶ 45.

On April 21, 2020, after the investigation was complete, Devonshire notified Doe that the hearing was scheduled for April 30, 2020. Id. at ¶ 55. Doe also received a copy of the final investigative report. Id. On April 28, 2020, Doe was informed for the first time that she could attend the hearing. Id. at ¶ 56. Devonshire asked Doe whether she had an advisor or support person, and Doe replied that she did not. Id. at ¶ 58. Devonshire did not inform Doe that it was Wentworth's policy to appoint a support person free of charge. Id.

On April 30, 2020, the hearing was held over Zoom, during which the panel questioned a small number of witnesses. Id. at ¶ 61. The next day, the panel concluded that the respondent was not responsible for the sexual assault. Id. at ¶ 62. The panel *did* determine that sexual intercourse took place between Doe and the respondent and that Doe was intoxicated, but it concluded that it could not determine whether she was incapacitated. Id. at ¶¶ 63, 67. The panel found that the information in the investigative record and hearing testimony "suggest that a sober, reasonable person would not have thought that [Doe] was incapacitated." Id. at ¶ 63. The panel cited testimony that alleged that Doe and the respondent "engaged in a coherent conversation about politics" prior to having sex, that Doe retrieved a condom prior to the intercourse, and that Doe got up to close her door when other witnesses had opened it to check on them. Id. However, many witnesses also testified that Doe was extremely intoxicated the night of the alleged assault. Id. at ¶ 68. Witnesses reported that Doe had "kind of passed out," that she was "slurring her speech," that, at one point, she was slumped over a chair," and that the respondent had carried her to the bathroom because she could not move. Id.

    D.    *Continuing Harm*

Doe alleges that the respondent continues to attend Wentworth and that she must actively avoid him because each time she encounters him she is retraumatized. Id. at ¶ 70. This has limited her ability to participate in class and in extra-curricular activities. Id. Doe also claims that she continues to suffer from declining mental health arising from the incident and requires treatment and therapy. Id. at ¶ 71.

**II.**    **Standard of Review**

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson

v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### III. Discussion

#### A. *Title IX*

Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. An individual has a private right of action against an educational institution that violates the provisions of Title IX under several different theories. Franklin v. Gwinnet Cnty. Pub. Sch., 503 U.S. 60, 76 (1992). Doe brings Title IX claims under two such theories: deliberate indifference and erroneous outcome.

##### 1. Deliberate Indifference

Title IX provides a private right of action "where the [federal] funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities." Davis v. Monroe Cnty. Bd. Of Educ., 526 U.S. 629, 633 (1999). To state a claim of deliberate indifference, a plaintiff must plausibly allege that "[1] [a federally] funded recipient is [2] deliberately indifferent to sexual harassment, [3] of which they have actual knowledge, [4] that is

so severe, pervasive, and objectively offensive that it can be said to deprive the [plaintiff] of access to the educational opportunities or benefits provided by the school." Id. at 650. A defendant acts with deliberate indifference "to acts of student-on-student harassment only where the [defendant's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." Id. at 648. "[T]he deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." Id. at 645 (internal quotations and alteration omitted).

The bar for a showing of deliberate indifference under Title IX is a high one. Significantly, the Supreme Court has described deliberate indifference as "an official decision by [the person with notice] not to remedy the violation." Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 277 (1998). And the First Circuit has concluded that "Title IX does not require educational institutions to take heroic measures, to perform flawless investigations, [or] to craft perfect solutions." Fitzgerald v. Barnstable Sch. Comm., 504 F.3d 165, 174 (1st Cir. 2007), rev'd on other grounds, 555 U.S. 246 (2009). A school will not be held liable for deliberate indifference if it takes "timely and reasonable" measures to end the harassment. Wills v. Brown Univ., 184 F.3d 20, 26 (1st Cir. 1999).

In this case, Doe alleges that Wentworth violated her Title IX rights by responding with deliberate indifference to her report of sexual assault. Specifically, she points to the facts that Wentworth (1) waited three months to interview the respondent; (2) failed to conduct a complete investigation and adequate follow-up; (3) failed to conduct an impartial investigation; (4) considered Doe's sexual history, contrary to its stated policies; (5) disregarded evidence of Doe's incapacitation; and (6) allowed the respondent to remain on campus without consequence, causing Doe to be regularly retraumatized. Wentworth counters that its investigation was

reasonable where it (1) issued a no-contact order the day that Doe requested it; (2) placed the investigation on hold after Doe failed to respond to outreach from the Title IX coordinator; (3) reopened the investigation upon Doe's request; (4) hired investigators to conduct numerous additional interviews; and (5) held a hearing, at which Doe was able to testify.

As described in Doe's Complaint [Doc. No. 1], Wentworth took action in response to her allegations that ended the sexual harassment. Wentworth immediately issued the requested no contact order at Doe's request. Doe has made no allegations that respondent ever violated this order. That Doe believes the subsequent investigation should have been conducted differently does not amount to a claim of deliberate indifference. See Porto v. Town of Tewksbury, 488 F.3d 67, 73 (1st Cir. 2007) ("a claim that the school system could or should have done more is insufficient to establish deliberate indifference"). Dismissal of the Title IX deliberate indifference claim is therefore warranted.

2. Erroneous Outcome

Doe also brings a Title IX claim under an erroneous outcome theory. To state a claim of an erroneous outcome, a plaintiff must allege (1) "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" and (2) "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." Yusuf v. Vassar Coll., 35 F.3d 709, 715 (2d Cir. 1994); see Doe v. Trs. of Boston Coll., 892 F.3d 67, 90 (1st Cir. 2018) (citing, without adopting, the standard articulated in Yusuf). As to the first prong, the pleading burden "is not heavy." Yusuf, 35 F.3d at 715. For example, a complaint may allege "particular evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of a complainant or witnesses, particularized strengths of the defense, or other reason to doubt the veracity of the charge" or a "particular procedural

flaws affecting the proof." Id. Here, where Doe alleges, among other things, that Wentworth delayed interviewing witnesses after giving respondent and others notice of her complaint, failed to request the results of the hospital exam or the campus police's investigative notes, and largely discounted witness reports regarding her intoxication, she has satisfied the first prong.

The second prong poses a more difficult hurdle. The facts alleged must "tend to show that there was a causal connection between the outcome of [the plaintiff's] disciplinary proceedings and gender bias." Trs. of Bos. Coll., 892 F.3d at 91. Cognizable allegations of gender bias typically include "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." Yusuf, 35 F.3d at 715.

Wentworth argues that Doe's allegation that she "suffered an erroneous outcome in the school's adjudicatory process pertaining to her sexual assault complaint . . . based on her gender," Compl. ¶ 81 [Doc. No. 1], is conclusory. Doe responds by pointing to a number of factual allegations that Doe contends support her claim that Wentworth engaged in a pattern of conduct that disfavored her because she was a woman. The court agrees that the first allegation is insufficient to state a claim and finds that most of the alleged facts identified by Doe amount to no more than an allegation that the respondent was favored over the complainant, which alone is gender neutral.

One allegation highlighted by Doe stands out, however, namely, that "[t]he Hearing Panel decided to improperly review and consider rumors regarding the Plaintiff's sexual history (which the Title IX Coordinator allowed to be submitted to the Panel) in rendering their decision, but did not do the same for the male Respondent." Wentworth responds that to the extent that Doe's claim is based on witness statements that reference Doe's past sexual activity, those

11

statements do not reflect conduct by Wentworth and cannot establish that Wentworth was motivated by gender bias in rendering its decision. Doe's complaint, however, is not that the students made these statements but that the statements were included in Wentworth's Investigative Report. The court agrees that the inclusion of Doe's sexual behavior with others—when combined with the discounting of evidence of her incapacity—is sufficient to allow her to move forward on her Title IX erroneous outcome.

      B.    *Breach of Contract*

Doe also brings a claim for breach of contract under state law. "The student-college relationship is essentially contractual in nature." Mangla v. Brown Univ., 135 F.3d 80, 83 (1st Cir. 1998) (citing Russell v. Salve Regina College, 938 F.2d 315, 316 (1st Cir. 1991)). "The terms of the contract may include statements provided in student manuals and registration materials." Id. When interpreting contracts between students and their academic institutions, courts in Massachusetts "employ 'the standard of reasonable expectation—what meaning the party making the manifestation, the university, should reasonably expect the other party to give it.'" Schaer v. Brandeis Univ., 432 Mass. 474, 478, 735 N.E.2d 373 (2000). Although universities have "flexibility to adopt diverse approaches to student discipline matters that do not meet federal due process requirements," Doe v. Trustees of Bos. Coll., 942 F.3d 527, 535 (1st Cir. 2019), they must meet the expectations that arise from the terms of the contract, id. at 533.

Doe alleges that Wentworth breached its contractual obligations under the Student Code of Conduct and the Sexual Misconduct and Sex-Based Discrimination Policy by (1) failing to conduct a prompt and impartial investigation; (2) failing to objectively evaluate the evidence obtained during the investigation; (3) failing to gather and consider all the relevant evidence during the investigative and adjudicatory process, (4) failing to use a preponderance of the

12

evidence standard in reaching its determination, (5) including improper information in the investigative record, and (6) considering such improper information in the rendering of the decision. Wentworth counters that Doe is citing from an "unidentified policy" that may not have been in effect during the 2019-2020 academic year. But on a motion to dismiss, the court must take Doe's allegations as true. Where Doe has set forth the alleged terms of the contract between Doe and Wentworth and made specific allegations regarding how Wentworth breached those terms, her claim survives a motion to dismiss.

### IV. Conclusion

For the foregoing reasons, Wentworth's <u>Motion to Dismiss</u> [Doc. No. 15] is GRANTED IN PART as to Count I (Title IX deliberate indifference) and DENIED IN PART as to Counts II (Title IX erroneous outcome) and III (breach of contract).

IT IS SO ORDERED.

June 3, 2022                                       /s/ Indira Talwani
                                                          United States District Judge